859 So.2d 408 (2003)
Jimmy Harrison LEE, Appellant,
v.
Evelyn Joyce LEE (Reed), Appellee.
No. 2002-CA-00262-COA.
Court of Appeals of Mississippi.
October 7, 2003.
Callestyne Hall Crawford, attorney for appellant.
Boyd P. Atkinson, attorney for appellee.
Before SOUTHWICK, P.J., LEE and MYERS, JJ.
LEE, J., for the Court.

PROCEDURAL HISTORY AND FACTS
¶ 1. Jimmy Harrison Lee and Evelyn Joyce Lee were married on April 22, 1983, *409 and a daughter, Kelly Doreen Lee, was born on March 5, 1985. Evelyn filed for divorce in the Leflore County Chancery Court on October 6, 1989, Jimmy filed a response on November 6, 1989, and a divorce was granted on November 17, 1989. Evelyn was given sole custody of Kelly with restricted visitation to Jimmy. The court deferred the issue of child support and alimony, due to the lack of information concerning Jimmy's employment and income.
¶ 2. On May 13, 1993, Jimmy was found to be disabled and was awarded Supplemental Security Income (SSI) benefits. On January 4, 1994, Evelyn filed a petition for modification, requesting child support from Jim. There was a hearing in September of 1994, which was continued to December of 2001. The chancellor set child support at $65 per month, retroactive from the hearing in September of 1994, with $10 a month added for arrearage, for a total of $75 due per month. Jimmy then perfected his appeal to this Court, asserting the following issues: (1) whether the chancellor erred in awarding child support based on Jimmy's sole source of income, the SSI benefits; and (2) whether federal law preempts any Mississippi law which imposes a child support obligation on Jimmy's SSI benefits. We note that this cause was originally remanded to the chancery court for the parties and the chancellor to resolve other issues. Jimmy filed a motion for relief from judgment and declaratory relief, which was noticed for hearing. However, as neither of the parties appeared for the hearing nor notified the court that the hearing had been cancelled, this cause is before us yet again.

DISCUSSION OF ISSUES
¶ 3. As Evelyn did not file a brief in this matter, we have two options before us. The first is to take Evelyn's failure to file a brief as a confession of error and reverse, which should be done when the record is complicated or of large volume and "the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error." May v. May, 297 So.2d 912, 913 (Miss.1974). The second is to disregard Evelyn's error and affirm, which should be used when the record can be conveniently examined and such examination reveals a "sound and unmistakable basis or ground upon which the judgment may be safely affirmed." Id. Because Jimmy has not made out an apparent case of error and the basis for the chancellor's decision is sound, we affirm and discuss the merits below.
¶ 4. The dissent argues that Jimmy should not be required to pay child support because the child in question is not his biological child. A letter written by Evelyn's attorney stated that Jimmy was not the biological father, and a copy of adoption documents was attached. While we agree that a father should not be required to continue child support payments for a child determined not be his biological child, we cannot suspend the payments in this case solely based on a letter completely extrinsic to the record. Furthermore, counsel for appellant was given an opportunity to have this matter presented to the chancery court but never did and did not contact this Court either.
¶ 5. Our standard in reviewing findings of the chancery court is clear: we will not disturb the chancellor's findings on appeal unless the chancellor abused his discretion, was manifestly wrong, or applied an erroneous legal standard. Pearson v. Pearson, 761 So.2d 157(¶ 14) (Miss. 2000).
¶ 6. We note that a majority of states exempt SSI benefits from inclusion in calculating gross income for child support *410 purposes. Upon examination of the record, we find that the chancellor did not award child support based solely on Jimmy's SSI benefits. The chancellor stated that the guidelines allow the court to consider income from any source, including government payments. The chancellor was also of the opinion that a withholding order could not be placed upon SSI benefits. However, after observing and questioning Jimmy at the hearing in 1994, the chancellor determined that Jimmy did have the ability to pay some child support. The chancellor stated that he did not believe Jimmy was as destitute as he claimed or that Jimmy was as incapacitated as he claimed. Evidently Jimmy received $7,000 in 1992 as back pay after being approved for SSI benefits and only gave about $100 of that money to Kelly. Jimmy testified that he gave the rest to his mother for taking care of him during the year after his accident.
¶ 7. The chancellor determined that Jimmy was capable of finding a way to raise money in order to support Kelly, even if it was not a great sum. The chancellor stated the following at the 2001 hearing:
Now if, in fact, there is some restriction that would be placed on because of court ruling otherwise, the Court still finds Mr. Lee, though he had a mental condition which required and which allowed him to have a hundred percent disability for SSI, still had physical abilities and enough mental ability to make some provision for his child through some form of work or the efforts of, if nothing else, picking up Coke cans and turning them in for a refund. There are many ways in which an individual, when it comes to their children, can make some amount of money so that some allocation can be made from that.
¶ 8. We cannot find that the chancellor abused his discretion in awarding child support to Kelly. As the chancellor did not base the amount of child support solely on Jimmy's SSI benefits, we decline to discuss Jimmy's remaining issue of whether federal law preempts any Mississippi law imposing a child support obligation on SSI benefits.
¶ 9. THE JUDGMENT OF THE LEFLORE COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., MYERS AND GRIFFIS, JJ., CONCUR. IRVING, J., DISSENTS WITH A SEPARATE WRITTEN OPINION JOINED BY KING, P.J., BRIDGES, THOMAS AND CHANDLER, JJ.
IRVING, J., Dissenting:
¶ 10. I cannot agree with the majority that Jimmy should be required to pay child support for a child who all parties, on appeal, agree is not his child. The majority finds that the record before us is inadequate to permit a decision predicated upon the notion that Jimmy is not the biological father of the child for whom he has been ordered to pay child support. The majority reaches this decision notwithstanding the fact that the attorney for Evelyn, during the pendency of this appeal, has represented to this Court that DNA analysis has revealed that Jimmy is not the father of the minor child. Concluding that it has no other option but to decide the appeal without consideration of the representation that Jimmy is not the biological father of the minor child, the majority affirms the judgment of the trial court ordering Jimmy to pay child support.
¶ 11. With respect for the majority, I must dissent for two reasons. First, as explained in the paragraphs that follow, I believe there is an alternative to deciding *411 the appeal at this time. Second, even if it is appropriate to decide the appeal now on its merits, I believe the majority errs in affirming the trial court because I do not believe there was any credible evidence to support the chancellor's decision.
¶ 12. After this case was appealed, Evelyn's attorney wrote the clerk of this Court and advised as follows:
I realize that the brief for appellee is delinquent in this matter and I do not intend to file a brief on behalf of appellee. The above styled case arose out of delinquent child support and an attempt on the part of Mrs. Lee to collect back child support from Mr. Lee. Since that hearing that is being appealed to the Supreme Court, it has been learned that Mr. Lee is not, in fact, the biological father of the child in question and an adoption proceeding has been filed in Leflore County on behalf of Mrs. Lee and the biological father. (emphasis added).
A copy of the adoption documents, which were filed in the Chancery Court of Leflore County, was attached to counsel's letter.
¶ 13. The record in the trial court reveals that on June 17, 1994, the chancellor entered an order requiring Jimmy to pay $150 per month in child support. Jimmy filed a pro se motion to set aside the support order because, according to Jimmy, he never received notice of the hearing. For whatever reasons, Jimmy's motion was not ruled upon until August 1, 2001, at which time the chancellor ordered "[t]hat enforcement of the order entered on June 17, 1994, is suspended retroactively until the Court's directives are met according to that hearing held as transcribed on September 28, 1994."
¶ 14. In the September 28, 1994 hearing, which was referenced in the August 1, 2001 order, the trial court reserved ruling on the amount of child support:
until it has an opportunity to have the Department of Human Services case worker on this case consulting with [sic] and their position made clear to this Court as to what they feel this individual should be able to pay and/or whether they have pursued any other avenues or attempts to get support, so that the Court would have full information about that and can then set some nominal sum of money, probably under $100.
On December 14, 2001, another hearing was held on the matter of child support, and at that time, the chancellor ordered Jimmy to pay $65 per month in child support. The order for support, however, was not entered until January 18, 2002.[1] It is from this order that the present appeal emanates.
¶ 15. The remand order from this Court, which is referenced in the majority opinion, sent the case back to the chancery court for sixty days to allow either party to file a motion for relief from the January 18, 2002 support order since subsequent developments have shown that Jimmy is not the biological father of the minor child. As noted in the majority opinion, Jimmy, pursuant to this Court's order of remand, filed in the Chancery Court of Leflore County a motion for relief from the January 18, 2002 order, but neither party appeared on the date of the hearing which was set in the notice of hearing filed with Jimmy's motion. As best as can be ascertained from the record, this motion still lingers. It may be that the adoption occurred in the interim, and the parties view *412 this issue as moot. I note that, according to the proof of publication attached to the adoption pleadings, process in those proceedings was completed on September 19, 2002, well before this Court's remand order was entered on April 8, 2003.
¶ 16. Nevertheless, on these facts, I cannot agree that Jimmy should be required to pay child support, either retroactively or prospectively. First, the only final order of support entered in this case is the one that is the subject of this appeal. Therefore, we are not faced with a situation concerning vested past-due support, even though the chancellor's January 18, 2002 support order adjudicated Jimmy's support obligation retroactively to September 1994.
¶ 17. Well settled now is the law in this state thatnotwithstanding a prior judicial adjudication of paternitya child support obligor, who has been excluded by DNA testing from being the biological father of the minor child who is the subject of the support order, is not liable for the support of that child. See M.A.S. v. Mississippi Department of Human Services, 842 So.2d 527, 531 (¶ ¶ 17-18) (Miss.2003); cf. Rafferty v. Perkins, 757 So.2d 992 (Miss.2000).
¶ 18. In refusing to consider a cancellation of Jimmy's support obligations, the majority says "we cannot suspend the payments in this case solely based on a letter completely extrinsic to the record." Majority opinion at (¶ 4). I find this explanation interesting, particularly in light of the fact that it was this "extrinsic letter" that formed the basis for this Court's issuing the order referenced in paragraph two of the majority's opinion. Moreover, it does not appear that any payments have been made. The judgment ordering the payments is the judgment being considered in this appeal. The appeal does not involve the suspension of child support payments but the correctness of a judgment which orders payments to be made retroactive.
¶ 19. I understand the majority's frustration in light of the fact that, during the sixty-day remand period ordered by this Court, the matter of paternity of the minor child apparently was not resolved. However, the fact is, during that remand, a Rule 60(b) motion was filed by Jimmy. This fact was verified in a letter, dated June 23, 2003, from a deputy clerk of the Chancery Court of Leflore County to the clerk of this Court. The letter advised that indeed a motion had been filed and noticed for hearing but neither party, nor counsel, appeared at the noticed hearing, and no one advised the trial court that the hearing had been canceled. We do not know why the attorneys did not appear for the hearing but should not assume that the attorneys were wilfully and intentionally ignoring the order of this Court to get it done within sixty days.
¶ 20. The fact that Jimmy filed, but did not bring on for hearing, a motion for relief from the support order should not operate to his disadvantage. I find this to be particularly true since (1) a timely appeal had already been taken from the entrance of the support order, and (2) allowing the support order to stand runs afoul of the clear holding in M.A.S.
¶ 21. It seems to me that, once this Court chose to treat counsel's letter, in the words of this Court's order, "as a petition for leave to file a motion before the Chancery Court of Leflore County under Rule 60(b) for relief from the final judgment now before [us] on appeal," we should not ignore the lingering issue of paternity and decide the case as if we are unaware that the paternity issue is pending and that relief from the very judgment the majority affirms is being pursued by the pending Rule 60(b) motion. A show cause order would be a more appropriate course of *413 action for us to follow rather than deciding the appeal at this time adversely to Jimmy.
¶ 22. In deciding the appeal, the majority pretermits the question of whether Jimmy's Social Security supplemental income can be used in the calculation of his adjusted gross income. The majority, noting that a majority of states exempt SSI benefits from the calculation of an obligor's adjusted gross income for child support purposes, decides that it is not necessary to decide the question because the chancellor "did not award child support based solely on Jimmy's SSI benefits." I agree with the majority that the chancellor did not base the award solely on Jimmy's SSI benefits but he may just as well have done so. The chancellor based the award on his conviction, not on evidence adduced, that Jimmy could make money from some source, even if it meant picking up cans.
¶ 23. I absolutely salute the chancellor's effort to hold men responsible for supporting their children, but the effort must be done within the bounds of the law. Therefore, I cannot agree that a one hundred percent mentally disabled, and apparently unskilled and uneducated, person can pick up enough cans to meet his child support obligations. There is just no proof in this record that Jimmy had any other source of income or that he possessed any entrepreneurial skills which would allow him to make some money. Nor is there any type of vocational or occupational rehabilitative assessment of Jimmy upon which the chancellor could rely. Therefore, it is my opinion that the chancellor abused his discretion in ordering child support based on Jimmy's ability to make money.
KING, P.J., BRIDGES, THOMAS AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] The order is actually dated January 18, 2001. However, it is obvious that the date should have been January 18, 2002.